**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RUTGERS, THE STATE UNIVERSITY, | |
| Plaintiff, | |
| v. | Civil Action No. 16-4183-BRM-LHG |
| BIOARRAY SOLUTIONS, LTD., IMMUCOR, INC., and MICHAEL SEUL, | |
| Defendants. | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a motion by Plaintiff Rutgers, The State University ("Rutgers") to remand this action to the Superior Court of New Jersey, Law Division, Middlesex County. (ECF No. 17-1.) Defendants BioArray Solutions, Ltd. ("BioArray"), Immucor, Inc. ("Immucor"), and Michael Seul ("Seul") (collectively, "Defendants") oppose the motion. (ECF Nos. 20, 23.[1]) For the reasons set forth herein, Rutgers's Motion to Remand is **GRANTED**. The request for attorneys' fees is **DENIED**.

   **I.   FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from an alleged breach of contract licensing various patent rights, conveyed from Rutgers to BioArray. The parties dispute the scope of the license, the effect it has on various patents, and, consequently, the effect on this Court's jurisdiction.

---

[1] The Court cites to the unredacted version of parties' briefs which were filed under seal with the Court.

Dr. Richard Ebright ("Ebright"), a Rutgers employee, and Seul, the former CEO of BioArray,[2] are the co-inventors named on Patent No. 7,083,914 (the "'914 Patent"), while their employers, Rutgers and BioArray, are the owners of the '914 Patent. (Not. of Removal (ECF No. 7) at ¶ 11; ECF No. 17-1 at 2; ECF No. 23 at 16 n.8.) Rutgers and BioArray entered into two Exclusive Licensing Agreements pertaining to prosecution and use of the '914 Patent, executed, respectively, in 1999 (the "1999 Agreement") (ECF No. 1-6 at 32-72) and 2007 (the "2007 Agreement") (*Id.* at 17-30). Pursuant to these agreements, Rutgers licensed certain rights to the '914 Patent to BioArray. (*Id.* at ¶¶ 1, 2, 19.) In exchange, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*Id.* at ¶¶ 24-25.) Additionally, ███████████████████████████████████████████. (*Id.* at ¶ 12.)

Rutgers alleges BioArray and Seul instructed counsel to prosecute the '914 Patent on behalf of themselves, Ebright, and Seul, despite the terms of the 1999 Agreement. (*Id.* at ¶¶ 10, 12.) Between 1999 and 2006, several amendments were made to the '914 Patent claims, which Rutgers alleges were done without its knowledge or approval. (*Id.* at ¶¶ 14-18, 29; ECF No. 17-1 at 2.) In particular, Rutgers alleges the amendments "improperly narrow[ed] the breadth of the sole independent claim of the '914 Patent (and thereby the scope of [Rutgers's licensed '914 Patent rights]) in an effort to nullify Defendants' obligations under the [1999 Agreement and 2007 Agreement]." (ECF No. 17-1 at 2; *see* ECF No. 1-6 at ¶¶ 18, 27.)

---

[2] Immocur acquired BioArray pursuant to a merger agreement. (Sec. Am. Compl. (ECF No. 1-6) at ¶ 4.) Immucor has since been acquired by TPG Capital, L.P., and both TPG Capital, L.P. and Immucor assumed the liabilities of BioArray. (*Id.* at ¶¶ 4-6.) TPG Capital, L.P. is no longer a party to this action.

After the 1999 Agreement was terminated, allegedly for BioArray's non-performance (ECF No. 1-6 at ¶ 19), the parties entered into the 2007 Agreement (*id.* at 17-30; *see* ECF No. 7 at ¶ 9; ECF No. 17-1 at 2). The 2007 Agreement required Rutgers and BioArray ███████████████████████████████████████████████████████████████████████████████ ECF No. 1-6 at 24.) BioArray was responsible for ███████████████████████████████████████████████████████████████████████████████ (*Id.*)

During negotiation and execution of the 2007 Agreement, Defendants allegedly failed to "inform Rutgers that its products did not practice any of the claims of the '914 Patent" and "induce[d] Rutgers to negotiate a new agreement [(the 2007 Agreement)]" by making "false representations that [BioArray] needed the ['914 Patent] for products in development." (*Id.* at ¶ 20.) Additionally, Defendants allegedly breached their obligations in the 2007 Agreement "by not seeking or obtaining any patent claim covering [the amended '914 Patent claims]" even though "there were numerous patent applications in the prosecution process and possible patent applications available throughout the world that would fall within the purview of the [2007 Agreement]." (*Id.* at ¶¶ 26, 28.)

Rutgers filed a Complaint (ECF No. 1-2) in the Superior Court of New Jersey, Law Division, Middlesex County (Civ. A. No. L-4747-14) alleging fraud and breach of the 2007 Agreement. On or about October 14, 2014, Rutgers filed a First Amended Complaint (ECF No. 1-3), which Defendants answered (ECF Nos. 1-4, 1-5). On or about January 20, 2016, Rutgers filed a Second Amended Complaint (ECF No. 1-6), which Defendants answered (ECF Nos. 1-7, 1-8).

The parties proceeded with discovery until June 20, 2016, when, at a deposition, Rutgers's counsel informed Defendants it would be investigating the inventorship of certain patents and potentially making claims with respect to their validity at trial. Seul is the sole named inventor on these patents – No. 6,797,524 (the "'524 patent), No. 7,291,504 (the "'504 patent"), and No. 7,427,512 (the "'512 patent") (collectively, the "LEAPS Patents") – with rights assigned to BioArray. (ECF No. 7 at ¶¶ 11-13.) The LEAPS Patents are not referenced in the Second Amended Complaint, and all parties agree that, prior to June 20, 2016, Rutgers's case was pled as a state law action. (*Id.* at ¶¶ 9, 29; ECF No. 17-1 at 4.)

Specifically, at the June 20 deposition, counsel for Rutgers stated:

> [RUTGERS'S COUNSEL]: [W]e intend to show that [the LEAPS Patents] . . . are encompassed in Rutgers' patent rights for purposes of the 1999 and 2007 license agreements. . . . And you know, at trial, if we set out the fact that the '512 patent and the '524, which are marked on BioArray's products, in fact do encapsulate the Rutgers invention and should have been included in Rutgers' patent rights, . . . it will change the valuation, only enhance the valuation of Rutgers' patent rights under that agreement, one; and, two, put at risk the validity of the '512 and '524 patents that BioArray and Immucor hope to protect their product life.
>
> . . .
>
> [DEFENDANTS' COUNSEL]: It sounds to me like what you're alleging here is an inventorship dispute with respect to [LEAPS Patents] --
> [RUTGERS'S COUNSEL]: Um-hum.
> [DEFENDANTS' COUNSEL]: -- that you're claiming that Dr. Ebright should be named inventor on those patents.
> [RUTGERS'S COUNSEL]: And those patents should then, thus, be co-owned by Rutgers.
> [DEFENDANTS' COUNSEL]: And you're also -- so you're arguing that Dr. Ebright should be an inventor on [LEAPS Patents]; is that correct?
> [RUTGERS'S COUNSEL]: At a minimum, yeah.

> [DEFENDANTS' COUNSEL]: Okay. And you're arguing that the '914 patent is invalid? Or is it the other way around, that [the LEAPS Patents] are invalid?
> [RUTGERS'S COUNSEL]: That [the LEAPS Patents] are invalid. . . . Due to fraud on the patent office.
> [DEFENDANTS' COUNSEL]: Okay. So you're also arguing the [the LEAPS Patents] are invalid due to fraud of [sic] the patent office?
> [RUTGERS'S COUNSEL]: If it turns out that these should have been listed with Dr. Ebright as an inventor and that they picked up and dropped Rutgers -- the invention from Rutgers into their claims, that these – there's a potential validity problem for [the LEAPS Patents].

(ECF No. 7 at ¶¶ 15-16 (quoting Dep. Tr. of Eric Mirabel (ECF No. 1-9)).) Rutgers's counsel also stated that it did not intend to amend the Second Amended Complaint because it "broadly cover[ed] this kind of [allegation]." (ECF No. 1-9 at 471:9-14.)

Defendants claimed the case took a "dramatic turn" at this deposition because counsel for Rutgers, for the first time, gave Defendants notice of patent claims falling exclusively within federal jurisdiction. (ECF No. 7 at ¶¶ 12-13.) On July 8, 2016, Defendants filed a Notice for Leave to File a Counterclaim for Declaratory Judgment in the Superior Court with respect to the "inventorship and validity" of the LEAPS Patents. (ECF No. 1-12 at 7.) On or about July 11, 2016, before the motion could be decided, Defendants filed a notice of removal with this Court pursuant to 28 U.S.C. §§ 1331, 1338, 1441, 1446, and 1454. (ECF. No. 1 (redacted); ECF No. 7 (under seal).) Specifically, Defendants argued removal was proper under 28 U.S.C. § 1446(b)(3), because Rutgers's "[c]ounsel's unequivocal statements on the record" constitute "other paper from which it may be first ascertained that the case is one which is or has become removable." (ECF No. 7 at ¶¶ 23, 28 (quoting 28 U.S.C. § 1446(b)(3)).) Defendants further argued removal was proper under 28 U.S.C. § 1454(a), because they filed a counterclaim seeking federal relief. (*Id.* at ¶ 31.)

5

Following the removal, Rutgers offered Defendants a covenant not to sue and stated "in writing that it would not seek to alter inventorship, invalidate or otherwise challenge the enforceability of the LEAPS Patents." (ECF No. 17-1 at 3.) In response, "Defendants requested a commitment that Rutgers would not seek a determination or claim that Dr. Ebright is an inventor of any of the claims in the LEAPS patents, or that anyone other than Dr. Seul is an inventor of the claims in the LEAPS patents. (ECF No. 23 at 12-13.)

The parties could not come to an agreement, and Rutgers filed this Motion for Remand (ECF No. 17-1), arguing its claims do not fall within the exclusive jurisdiction of the federal court and were properly before the Superior Court. Rutgers contends it "is not seeking to invalidate the LEAPS Patents for inventorship or otherwise" and that Defendants motion seeking leave to file a counterclaim for declaratory judgment is moot. (*Id.* at 1-2.)

## II. LEGAL STANDARDS

A notice of removal of a civil action must be filed by a defendant within thirty (30) days of receiving the complaint. 28 U.S.C. § 1446(b)(1). However, where it is not evident from the face of the complaint that a case is removable, "a notice of removal may be filed within thirty [(30)] days after receipt by Defendants . . . of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447. Grounds for remand include: "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993). A motion for remand on the basis of a procedural defect in the removal must be filed within thirty (30) days of the notice of removal,

28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment," *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212-13 (3d Cir. 1991) (citing 28 U.S.C. § 1447(c)).

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Id.* at 396-403. Additionally, when a case is removed, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

A district court has subject matter jurisdiction over cases removed from state court for their assertion of federal patent law claims. Under 28 U.S.C. § 1454, "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights may be removed to the district court of the United States." More generally, pursuant to 28 U.S.C. § 1441, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." A district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "any Act of Congress relating to patents, plant variety protection, copyrights and trademarks," 28 U.S.C. § 1338(a).

A case "aris[es] under" federal law, and therefore may be removed to federal court, when "federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013); *see* 28 U.S.C. §§ 1331, 1338(a), 1441, 1454. For example, federal law

"creates" various patent causes of action under Title 35 of the United States Code. *See, e.g.*, 35 U.S.C. § 256; *see also Gunn*, 133 S. Ct. at 1064 (citing 35 U.S.C. §§ 271, 281). A case may also "aris[e] under" federal law when a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balances of federal and state judicial responsibilities." *Gunn*, 133 S. Ct. at 1065 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). In other words, under the *Gunn* test,[3] "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* All four factors must support federal jurisdiction, and jurisdiction pursuant to this test is rare. *Manning*, 772 F.3d at 163 ("Because we conclude that no federal issue has been necessarily raised here, we need not decide whether the other three *Grable* requirements are met."); *Desktop Alert, Inc. v. ATHOC, Inc.*, Civ. No. 215CV8337ESJAD, 2016 WL 1477029, at *5 (D.N.J. Feb. 24, 2016) ("[F]ailure of even a single factor will render federal 'arising under' jurisdiction inappropriate"), *report and recommendation adopted*, Civ. No. CV158337ESJAD, 2016 WL 1450551 (D.N.J. Apr. 13, 2016); *Urata v. Canare Elec. Co.*, No. A. Civ. 12-5704 JLL, 2013 WL 2395049, at *5 (D.N.J. May 29, 2013).

To determine whether this Court has jurisdiction under either theory, "the party asserting jurisdiction must satisfy the 'well-pleaded complaint rule,' which mandates that the

---

[3] This test is also referred to as the *Grable* test. *See Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd*, 136 S. Ct. 1562, 194 L. Ed. 2d 671 (2016). Because the parties in this case refer to the *Gunn* test, the Court will, as well.

8

grounds for jurisdiction be clear on the face of the pleading that initiates the case." *Goldman v. Citigroup Global Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016). More specifically:

> "[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75-76, 34 S.[ ]Ct. 724, 724, 58 L.[ ]Ed. 1218 (1914). . . . "Although [plaintiff's] allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Louisville & Nashville R. Co. v. Mottley*,[]211 U.S.[ 149,] 152, 29 S.[ ]Ct.[ 42,] 43 [(1908)]. For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law.

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 10 (1983); *see Kline v. Security Guards, Inc.*, 386 F.3d 246, 251 (3d Cir. 2004) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *Inselberg v. N.Y. Football Giants, Inc.*, Civ. No. 2:14-CV-01317 WJM, 2014 WL 5814268, at *3 (D.N.J. Nov. 10, 2014), *aff'd on other grounds*, 661 F. App'x 776 (3d Cir. 2016).

### III. DECISION

Rutgers does not allege any procedural defects in the removal, nor can it, because the motion to remand was filed more than thirty (30) days after the notice of removal.[4] 28 U.S.C.

---

[4] Substantial briefing is dedicated to whether Rutgers's counsel gave notice of federal claims at the June 20, 2016 deposition, whether the form of that notice started the thirty (30) day clock under 28 U.S.C. § 1446, and whether the motion for removal was timely filed. For the reason stated above, any procedural issues in the removal are moot. 28 U.S.C. § 1447(c).

§ 1447(c); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212-13 (3d Cir. 1991). Thus, Rutgers waived any procedural defects and the sole question before this Court is whether federal subject matter jurisdiction exists. The parties dispute both theories under which the Court could have "aris[ing] under" jurisdiction: (1) whether the causes of action asserted were created by federal law, and (2) whether the Court has jurisdiction pursuant to the *Gunn* test. *Gunn*, 133 S. Ct. at 1065; *see* 28 U.S.C. §§ 1331, 1338(a), 1441, 1454.

### A. Cause Of Action Created By Federal Law

Defendants contend a federal cause of action exists under 35 U.S.C. § 256 regarding the inventorship of the LEAPS Patents. (ECF No. 7 at ¶ 25 n.2.) Their argument is two-fold: (1) Rutgers recent inclusion of a new federal claim "rais[ing] inventorship and validity issues under the Patent Act[ pursuant to] 35 U.S.C. § 256" (*id.* at ¶ 30; *see id.* at ¶ 24 ("[Rutgers] now admits that the claims in this case include claims for correction of inventorship.")); and (2) Defendants proposed counterclaim should be considered because "[(a)] there is an actual controversy and cloud on inventorship, and [(b)] a claim for a declaration of inventorship is permissible under 35 U.S.C. § 256" (ECF No. 23 at 22).

To determine whether Rutgers's claims state a cause of action created by federal law, the Court reviews Rutgers's Second Amended Complaint under the "well-pleaded complaint" rule. *Caterpillar*, 482 U.S. at 392; *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 10; *Goldman*, 834 F.3d at 249; *Kline*, 386 F.3d at 251; *Inselberg*, Civ. No. 2:14-CV-01317 WJM, 2014 WL 5814268, at *3. The Court may not consider Defendants' anticipated defenses and must take Rutgers's Second Amended Complaint on its face. *Ibid.*

Rutgers does not set forth any cause of action created by federal law in its Second Amended Complaint. The Second Amended Complaint specifically alleges fraud and breach of

10

contract and does not cite to federal law, reference patent infringement, or challenge inventorship.

Defendants argue "someone who believes she is the inventor of even a single claim of an issued patent, but who is not listed as an inventor on that patent, 'may bring a cause of action to correct inventorship' under 35 U.S.C. § 256," which "may only be brought in federal court." (ECF No. 23 at 12 (citing 28 U.S.C. § 1338(a); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004)). While this may be true, Rutgers's Second Amended Complaint does not allege such a cause of action.[5] In fact, by Defendants' own admission, Rutgers's Second Amended Complaint, on its face, does not include any federal claims and was properly in state court. (ECF No. 7 at ¶¶ 9, 29.) If it did include federal claims, the case could have been removed upon its filing on January 20, 2016. (ECF No. 1-6.) The Court will not create a federal cause of action where Rutgers did not plead one.[6] *See Caterpillar*, 482 U.S. at 392 ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

Further, the Court will not consider Defendants' counterclaim. Defendants contend, in order to comply with 28 U.S.C. § 1454, they had to file for removal within thirty (30) days of receiving "other paper" notifying them of Rutgers's federal claims rather than thirty (30) days from Defendants' filing of a counterclaim. (ECF No. 23 at 22 (citing *Accutrax, LLC v.*

---

[5] The extent to which Rutgers's Second Amended Complaint may implicate federal laws under the *Gunn* test is a separate issue discussed later in this Opinion.

[6] In his own Opposition, Defendant Seul argues Rutgers's Second Amended Complaint should be construed to include a federal cause of action for fraud as to the LEAPS Patents, because fraud as to those patents cannot, according to Seul, be decided without a determination on inventorship. (ECF No. 20 at 4-5.) This implicates the jurisdiction test under *Gunn* and is discussed *infra*.

11

*Kildevaeld*, 140 F. Supp. 3d 168, 172 (D. Mass. 2015); *Mirowski Family Ventures, LLC v. Boston Sci. Corp.*, 2014 U.S. Dist. LEXIS 77875 (D. Md. June 5, 2014)).) Therefore, they filed the notice of removal prior to the state court ruling on their motion for leave to file a counterclaim in order to avoid missing the removal deadline. Although the Court is sympathetic to this conflict (*see* discussion regarding attorneys' fees *infra* Section III(C)) and Defendants may ultimately be granted leave to file their counterclaim for federal relief, no such cause of action is presently before this Court. *See, e.g.*, *McDonough v. UGL UNICCO*, 766 F. Supp. 2d 544 (E.D. Pa. 2011) (finding that proposed amended complaint was not removable until motion to amend was granted and the amended complaint became effective).

Accordingly, no cause of action created by federal law exists in this case.

### B. The *Gunn* Test

The parties' primary dispute is whether Rutgers's state law claims implicate a federal question under the *Gunn* test. 133 S. Ct. at 1065. The Court reviews each factor in turn, keeping in mind Defendants' burden (1) under the well-pleaded complaint rule, *Goldman*, 834 F.3d at 249, and (2) to demonstrate all four factors of this test. *Manning*, 772 F.3d at 163.

#### i. Whether The Federal Issue Is Necessarily Raised

This factor requires the Court to determine whether Rutgers's state claims necessarily raise a federal patent question. *See Gunn*, 133 S. Ct. at 1065. In *Gunn*, the Supreme Court found plaintiff's legal malpractice claim necessarily raised the federal patent question from the underlying case due to the unique nature of the legal malpractice "case within a case" claim. *Id.* To succeed on his state law legal malpractice claim, the respondent had to "show he would have prevailed in his federal patent infringement case if only petitioners had timely made an experimental-use argument on his behalf." *Id.*

Unlike *Gunn*, determination of a federal question, such as inventorship of the LEAPS Patents, is not required to adjudicate Rutgers's state law breach of contract and fraud claims as pled in the Second Amended Complaint. Instead, this case is similar *Inselberg*. Civ. No. 2:14-CV-01317 WJM, 2014 WL 5814268, at *5. In *Inselberg*, the court stated:

> Unlike the plaintiff in *Gunn*, Plaintiff in this case does not assert that he could have succeeded on a claim for patent infringement, which would thereby require an interpretation of federal patent law. Instead, he acknowledges that he has relinquished all rights to recover under the Patent Act and instead seeks recovery on theories premised solely on state law.

*Id.* Here, while Rutgers and Defendants have not formally come to an agreement precluding federal claims, the Second Amended Complaint does not seek such recovery. Further, Rutgers assures[7] this Court it is not seeking to alter the LEAPS Patents through its pursuit of state claims:

> Rutgers has made the judicial admission that it is not seeking to alter inventorship. . . . Rutgers is not seeking ownership of the LEAPS Patents; it is claiming breach of contract and fraud. Rutgers says that had Defendants performed in good faith its promises to Rutgers, the LEAPS Patents would have been prosecuted as continuation applications to the '914 Patent application, and thus would have been part of Rutgers Patent Rights under the exclusive license agreements. Damages, thus, flow from the compensation provisions of the exclusive license agreements and from the harm to Rutgers caused by the fraud.

(Rutgers's Reply (ECF No. 29) at 6; *see also* ECF No. 17-1 ("Rutgers is not seeking to invalidate the LEAPS Patents for inventorship or otherwise . . . .").

---

[7] Counsel is reminded that, by submitting signed papers to the Court, they are certifying to the statements of those papers, to the best of their knowledge, and certifying any motions or arguments are not frivolous. *See* Fed. R. Civ. P. 11.

The Court acknowledges Defendants arguments regarding Rutgers's counsel's statements during the June 20, 2016 deposition, particularly those indicating the Second Amended Complaint could be construed to include federal claims. (ECF No. 20 at 4; ECF No. 23 at 7-8 (quoting ECF No. 1-9 at 471:9-14).) However, the Court is not willing to read into Rutgers's claims a "necessarily raised" federal claim based on this colloquy.

Accordingly, Rutgers's claims do not necessarily raise a federal patent issue. Based on this finding, the Court need not evaluate the remaining *Gunn* factors, but will comment on them for the purpose of having a comprehensive opinion and complete record.

### ii. Whether The Federal Issue Is Actually Disputed

The parties do not dispute this factor. Rutgers takes no position (ECF No. 17-1 at 8) and Defendants contend issues of inventorship, infringement, validity, and enforceability are actually disputed (ECF No. 23 at 11.) Because the other *Gunn* factors have not been met, the Court need not make a finding on this issue. *Manning*, 772 F.3d at 163.

### iii. Whether The Federal Issue Is Substantial

A federal claim will always be "substantial" to the parties in dispute where necessarily raised by plaintiff's state law claim. *Gunn*, 133 S. Ct. at 1066. Therefore, "[t]he substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole" and "primarily focus[es] not on the interests of the litigants themselves, but rather on the broader significance . . . for the Federal Government." *Id.*

In *Goldman*, the Third Circuit found no substantial federal issue existed where, "at bottom," the case was "a commonplace state law contract dispute." 834 F.3d at 249. Plaintiffs sought to vacate an adverse FINRA arbitration award based on arbitrator and counterparty misconduct. The Circuit held the allegation against this particular panel did not "implicate[] the

proper functioning of a major national securities exchange" and was not "likely to affect the securities markets more broadly." *Id.* Significantly, the court declined to find jurisdiction existed over this "arbitrator partiality" dispute simply because "the allegedly misbehaving arbitration panel happened to be affiliated with a self-regulatory organization." *Id.*

Similarly here, even assuming a federal issue was necessarily raised, the issue would not be substantial on a broader patent level and would not be substantial to anyone other than the parties. The parties contest whether the LEAPS Patents should have been prosecuted as part of the '914 Patent and, although that dispute may ultimately (albeit not at this time) require a determination regarding the LEAPS Patents, that decision affects only the parties involved. A determination on the LEAPS Patents, if required, is based on and limited to the 1999 and 2007 Agreements and cannot be said to have a broader effect on federal patent law.

Accordingly, any federal issue, assuming one was necessarily raised, is not substantial.

### iv. Effect On Federal-State Balance

Finally, this Court's jurisdiction would "disturb[ the] congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see Gunn*, 133 S. Ct. at 1065. Although there is no doubt federal courts have jurisdiction over patent law claims and therefore have a greater interest than the state courts in adjudicating these issues, no such claim exists in this case. State courts have an interest in regulating and enforcing contract disputes among its citizens and, until this case becomes more than one for breach of contract and fraud, this Court does not have jurisdiction. As stated by the Third Circuit in *Goldman*, "[e]xpanding federal question jurisdiction to contractual disputes . . . runs the risk of 'disturbing [the] congressionally approved balance of federal and state judicial responsibilities.'" 834 F.3d at 257 (quoting *Grable*, 545 U.S. at 314).

15

Because Defendants fail to demonstrate all four factors, this Court does not have jurisdiction under *Gunn*, and therefore does not have "aris[ing] under" jurisdiction under any theory to hear this case. Rutgers's Motion to Remand is **GRANTED**.

### C. Attorneys' Fees And Costs

This Court may, when remanding a case, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court has discretion in determining "whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

Rutgers argues "[t]his is the kind of exceptional case that merits an award of attorneys' fees and costs" because: (1) Rutgers told Defendants it would "not contest the official inventorship or otherwise seek to invalidate the LEAPS Patents;" and (2) "Rutgers gave Defendants an opportunity to withdraw their counterclaim and consent to remand based on Rutgers'[s] specific, written commitment not to alter the inventorship of the LEAPS Patents." (ECF No. 17-1 at 10-11.)

The Court disagrees, finding Defendants had a reasonable basis for seeking removal. No extraordinary circumstances exist for the Court to find otherwise. Defendants removed based on Rutgers's counsel's confusing statements at the June 20, 2017 deposition so as not to miss the removal deadline if, in fact, Rutgers's statements were to be construed as notice of federal claims. Defendants' removal was objectively reasonable. Rutgers's motion for attorneys' fees is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Rutgers's Motion to Remand (ECF No. 17-1) is **GRANTED**. This matter is therefore remanded to the Superior Court of New Jersey, Law Division, Middlesex County and the case is **CLOSED**. An appropriate order will follow.


Date: March 30, 2017                                  */s/ Brian R. Martinotti*
                                                      **HON. BRIAN R. MARTINOTTI**
                                                      **UNITED STATES DISTRICT JUDGE**